UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 12-0257-02 |
| VERSUS | JUDGE DONALD E. WALTER |
| DAVID LAMONT MANGUM | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is a motion for compassionate release filed pro se by the defendant, David Lamont Mangum ("Mangum"). See Record Document 307. The Federal Public Defender's Office notified the Court that its office would not be enrolling on behalf of Mangum. The Government opposes Mangum's motion. See Record Document 312. Mangum then filed a supplemental response in support of his motion. See Record Document 313. Based on the following, the motion for release is **DENIED**.

Mangum and three co-defendants were charged in a twelve-count indictment, charging various narcotics and firearm offenses. See Record Document 10. Mangum was charged in all twelve counts, which included conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, possession of methamphetamine with intent to distribute, distribution of methamphetamine, possession of firearms and ammunition by a convicted felon, and possession of a firearm in furtherance of a drug trafficking crime. See id. Mangum pled guilty to the conspiracy count and possession of a firearm in furtherance of a drug trafficking crime (Counts 1 and 11).

According to his presentence report, Mangun was subject to a statutory, mandatory minimum term of imprisonment of 120 months. The conviction on Count 11 carried a statutory, mandatory minimum term of imprisonment of 60 months, to run consecutively to any term of

imprisonment imposed on Count 1. See id. As a result, Mangum was subject to a combined mandatory minimum sentence of 180 months. On January 22, 2015, this Court sentenced Mangum to 144 months on Count 1 and 60 months on Count 11, to be served consecutively, for a total of 204 months of imprisonment. See Record Document 197. Mangum's sentence was later reduced to a total of 188 months following a change in the applicable sentencing guidelines which was made retroactive. See Record Document 265. Mangum is currently housed at the Federal Correctional Institution Yazoo City Low ("FCI Yazoo City Low") and he has a projected release date of March 2026.

On October 2, 2020, Mangum filed a letter motion for modification of sentence seeking compassionate release due to COVID-19. See Record Document 307. Mangum asserted in his supplemental response that he had emailed the Warden requesting compassionate release on August 26, 2020. See Record Document 313. Thus, Mangum has exhausted his administrative remedies through the Bureau of Prisons ("BOP") by requesting relief and waiting 30 days without receiving a final determination. See 18 U.S.C. § 3582(c)(1)(A). The Government concedes that Mangum has exhausted his administrative remedies but maintains that his motion fails on the merits. See Record Document 314 at 4. The Government also concedes that Mangum can demonstrate an "extraordinary and compelling reason" as defined in 18 U.S.C. § 3582(c)(1)(A) due to his diabetes,[1] as this is a condition recognized by the Centers for Disease Control ("CDC") as a confirmed COVID-19 risk factor.[2] See id. Nevertheless, the Government argues that

---

[1] The Government concedes that Mangum has alleged that he has diabetes, which is a confirmed COVID-19 risk factor recognized by the Centers for Disease Control ("CDC") ("Adults of any age with the following conditions **are at an increased risk** of severe illness from the virus that causes COVID-19: . . . Type 2 diabetes mellitus" https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html).

[2] Mangum also asserted that he suffers from high blood pressure, which the CDC lists under the category of "**might be at an increased risk** for severe illness from the virus that causes COVID-

2

Mangum is still a danger to the community and that the factors set forth under 18 U.S.C. § 3553(a) counsel against his release.  See id.

A judgment, including a sentence of imprisonment, "may not be modified by a district court except in limited circumstances."  Dillon v. United States, 560 U.S. 817, 824, 130 S. Ct. 2683, 2690 (2010).  Under 18 U.S.C. § 3582(c), a court generally "may not modify a term of imprisonment once it has been imposed," except:  (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A); (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).  Section 3852(c)(1)(A)(i) provides that a court may reduce a prisoner's sentence after administrative remedies have been exhausted "if it finds that" (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."

The Sentencing Commission's policy statement regarding compassionate release is consistent with the statute and provides, in pertinent part, as follows:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

---

19."  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

U.S.S.G. § 1B1.13. In the commentary following the policy statement, the Sentencing Commission identifies three specific reasons that are considered "extraordinary and compelling," as well as a broader provision for reasons deemed "extraordinary and compelling."

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>> (A) Medical Condition of the Defendant.—
>>
>>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>>
>>> (ii) The defendant is—
>>>
>>>> (I) suffering from a serious physical or medical condition,
>>>>
>>>> (II) suffering from a serious functional or cognitive impairment, or
>>>>
>>>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>>
>> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>>
>> (C) Family Circumstances.—
>>
>>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>>
>>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>>
>> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and

>compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G § 1B1.13 cmt. n. 1.

The defendant bears the burden to establish circumstances exist under which he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).  See United States v. Ennis, No. 02-1430, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release." (citing United States v. Stowe, No. 11-803, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019)); United States v. Wright, No. 16-214, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020) (Petitioner has the "burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute.").  As previously mentioned, the Government concedes that Mangum can demonstrate that extraordinary and compelling reasons exist under 18 U.S.C. § 3582(c)(1)(A) to modify his prison sentence based upon Mangum's history of diabetes. Specifically, the Government states:  "The United States concedes for the purposes of argument that the defendant presents at least one risk factor identified by the CDC as heightening the risk of severe illness or death were the inmate to contract COVID-19, namely, a history of diabetes" and that "this chronic condition presents 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility'" as provided in Section 1B1.13, comment note 1(A)(ii).  Record Document 312 at 7-8.

Regardless of this concession by the Government, the existence of an "extraordinary and compelling reason" does not end the inquiry.  The Court must consider whether Mangum remains a danger to the community before granting compassionate release, as required by United States Sentencing Guideline § 1B1.13(2), which refers to 18 U.S.C. § 3142(g).  Furthermore, 18 U.S.C. § 3582 and the policy statement require the Court to consider the sentencing factors set forth in 18 U.S.C. § 3553(a).

Section 3142(g) sets forth the factors that courts must consider in deciding whether to release a defendant pending trial. These factors to be considered include the "nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Similarly, Section 3553(a), which sets forth the factors to consider in imposing sentence, requires the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentencing imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a).

The Court finds that Mangum has not demonstrated that he will not be a threat to others or the community if released. Mangum was sentenced for conspiracy to possess methamphetamine with intent to distribute, as well as possession of a firearm in furtherance of a drug trafficking crime. In connection with his offense conduct, Mangum accepted responsibility for 3.552 kilograms of actual methamphetamine. Notably, Mangum was a convicted felon at the time of his offense and was not allowed to possess firearms. Furthermore, Mangum has a lengthy pattern of committing offenses involving controlled substances and firearms, including a 2001 conviction for possession with intent to distribute cocaine, a 2000 conviction for possession with intent to distribute cocaine, and a conviction for possession of marijuana. See Record Document 211. Additionally, Mangum has a poor record of abiding by his conditions of release, as evidenced by the fact that his parole was revoked while on supervision. See id. In addition, Mangum was arrested and charged with possession/introduction of contraband into a penal institution. See id.

See United States v. Mazur, 457 F. Supp. 3d 559, 564 (E.D. La. 2020) (noting that even if defendant's circumstances "presented extraordinary and compelling reasons to grant compassionate release," his history of attempted manslaughter, possession of controlled substances, and a misdemeanor for domestic abuse battery demonstrates that he is a danger to the community). Finally, even while serving his current sentence, Mangum continues to violate BOP policy, as evidenced by the fact that Mangum has had disciplinary violations while in prison, including possession of a hazardous tool in 2019. See Record Document 318. In light of the above, the Court concludes that Mangum remains a danger to others and his community.

Additionally, in examining the Section 3553(a) factors, to reduce Mangum's sentence would not reflect the seriousness of the offense, promote respect for the law or afford an adequate deterrence to criminal conduct. Furthermore, a deviation below the mandatory minimum sentences under which he was sentenced that were set by Congress would create a sentencing disparity between Mangum and other similar-situated defendants, thus invalidating a "just punishment" under 18 U.S.C. § 3553(a)(2)(A).

The Court has also looked at the presence of COVID-19 at the FCI Yazoo City Low. There are zero inmates and five staff members who are currently testing positive out of 1,398 total inmates.[3]  http://www.bop.gov/coronavirus (last updated 12/04/2020). Courts have held that "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). See, e.g., United States v. Clark, 451 F. Supp. 3d 651, 657 (M.D. La. 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria

---

[3] Three inmates and no staff have died from the virus. However, there are 84 inmates and 9 staff who have recovered from the virus.  www.bop.gov/coronavirus (last updated 12/04/20).

7

for extraordinary and compelling reasons for a reduction in sentence. . . .") (quoting United States v. Eberhart, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020)); Mazur, 457 F. Supp. 3d at 562 (holding that extraordinary and compelling reasons to grant compassionate release were not present for a prisoner diagnosed with myeloid leukemia and hypertension despite twenty-five percent of the inmate population testing positive for COVID-19). Mangum has not shown that inmates are currently not receiving adequate medical attention if they contract the virus. Additionally, Mangum has not shown that the BOP is unable to adequately manage the COVID situation. This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement.[4] Therefore, the Court finds that Mangum has not met his burden.

The Court shares Mangum's concerns about the effect of COVID-19 in the prison setting. However, those concerns are not being ignored by the BOP or this Court. The BOP is taking action to address COVID-19 concerns in its facilities. Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, "expand[s] the cohort of inmates who can be considered for home release." The BOP is currently reviewing prisoners to determine if temporary release to home confinement or some other type of release, removal, or furlough is appropriate, under the standards issued by the CDC for persons at heightened risk. The BOP currently has 8,073 inmates on home confinement and the total number of inmates placed in

---

[4] Mangum seems to request release to home confinement in his filings. In an abundance of caution, however, this request is also **DENIED**, as the decision on whether to release an inmate to home confinement is within the exclusive purview of the Bureau of Prisons. See 18 U.S.C. § 3621(b); United States v. Read-Forbes, 454 F.Supp.3d 1113, 1118 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); United States v. Rodriguez, No. 15-198, 2020 WL 5369400, at *3 (E.D. La. Sept. 8, 2020).

home confinement from March 26, 2020 to the present (including inmates who have completed service of their sentence) is 18,332. https://www.bop.gov/coronavirus/(last updated 12/04/2020).

For the foregoing reasons, **IT IS ORDERED** that Mangum's motion is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 4th day of December, 2020.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE